**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GEORGE LEON SMITH,

       Plaintiff,

v.                                                                           Civil No. 04-954 WJ/LFG

AMERICAN TELEPHONE &
TELEGRAPH COMMUNICATIONS, INC.,
a/k/a AT&T COMMUNICATIONS, INC.,
a Delaware Corporation,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING SECOND MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon a Second Motion for Summary Judgment filed by American Telephone and Telegraph Communications, Inc. ("AT&T") on January 31, 2006 (**Doc. 55**). Defendant moves for summary judgment on Plaintiff's claims brought against his employer under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and will be granted.

**Procedural Background**

Plaintiff originally filed this case with the Tenth Judicial District Court, Quay County, New Mexico on April 23, 2004. Following Defendant's removal of the case to federal court on both diversity and federal question jurisdiction, the Court ruled on motions by the parties, denying Plaintiff's motion to remove the case to arbitration, and denying Defendant's motion for dismissal of Plaintiff's claims based on preemption by § 301 of the LMRA. The Court allowed Plaintiff to

amend his complaint alleging claims under § 301.  Doc. 36.  Plaintiff timely filed his Amended Complaint.  Doc. 41.

The Amended Complaint alleges that Defendant AT&T breached a collective bargaining agreement that governed Plaintiff's employment and that Defendant violated Plaintiff's due process rights under the Fourteenth Amendment to the Constitution of the United States. Although Plaintiff has not named the Communication Workers of America ("Union") as a party, Plaintiff also alleges that the Union breached its duty of fair representation.

**Factual Background**[1]

Plaintiff George Leon Smith was employed as a communications technician by Defendant from approximately June 1973 to April 2001.  Plaintiff's employment was terminated April 26, 2001 following an investigation by Defendant into allegations that Plaintiff had engaged in theft of company property.

The detailed facts underlying Plaintiff's termination are not relevant to the issues which need to be resolved in this motion regarding Plaintiff's § 301 claims, but a synopsis of the events leading to Plaintiff's termination puts Plaintiff's claims of breach against both the Defendant and the Union in better context.

Two of Plaintiff's four sons, Greg Smith and Dennis Smith ("Greg" and "Dennis") worked at Lucent Technologies, Inc. ("Lucent").  Dennis had been authorized by his immediate supervisor to find someone to haul off the scrap metal, including copper wire, from a warehouse in Amarillo,

---

[1] These facts, viewed favorably to Plaintiff, are taken from the undisputed facts, Plaintiff's exhibits attached to the amended complaint, and the "factual history" presented by Plaintiff which is not challenged by Defendant.  Plaintiff does not dispute Defendant's statement of eighteen undisputed facts, which are deemed admitted.

Texas.  Proceeds from the material that was sold would be remitted to Lucent in the form of a check, which would then be forwarded to AT&T.  Pltff's Ex. A.[2]  Dennis told his father that metal recyclers would pay an additional amount for copper wire that was stripped of its insulation. Dennis suggested that Plaintiff's son Curtis, who was unemployed at the time, could perform the labor of stripping the metal, and be paid the difference between the dirty copper price and the clean copper price.  Plaintiff's wife set up a small copper recycling business known as A-1 Scrap Metal which she and her sons owned.  A-1 Scrap Metal remitted the market price for the dirty copper wire to Lucent, and then paid the difference between the market price for dirty copper and clean copper to Curtis.  Plaintiff assisted his son on his vacation time by picking up loads of recycled copper which had been stripped and cleaned and then delivering the loads to Jarvis, Inc., a Texas company.

Lucent conducted an investigation into Plaintiff's activities selling scrap metal to recyclers. AT&T relied on information obtained from this investigation to terminate Plaintiff's employment on April 26, 2001 for gross misuse and theft of Defendant's assets -- a violation of the Code of Conduct.  Plaintiff was terminated for engaging in a transaction which constituted a conflict of interest, and for gross misconduct.

Plaintiff was employed under a Collective Bargaining Agreement ("CBA") between Defendant and the Union.  The CBA included a Code of Conduct governing the behavior of

---

[2] The parties do not explain what the relationship was between Lucent and AT&T with regard to the recovery and sale of metal scrap. For example, it is not clear if Lucent has a contract with ATT for the copper recycling, or if the recycled copper came from AT&T facilities. See, e.g., Pltff's Exs. F and G; Ex. 4 to Amended Complaint "page 5 of 7" (implying that Lucent is a "vendor of AT&T").  However, other than to satisfy the Court's curiosity, these facts are immaterial to the issues which must be addressed and resolved in this motion.

employees. Theft of company property was prohibited by the Code of Conduct. The CBA required that employment disputes go through a three-step grievance procedure, followed by arbitration if sought and pursued by the Union with the timely submission of a notice of election to arbitrate. Arbitration must be pursued within 120 days following that notice, otherwise the grievance and election to arbitrate is considered closed, and the grievance no longer arbitrable.

It is undisputed that Plaintiff knew that his employment could be terminated for theft. However, Plaintiff contended that his termination was not for just cause, asserting that he never received any proceeds from the sale of copper wire and intentionally did not name himself as an owner of A-1 Scrap metal, which had been formed to help his son Curtis earn some money.

Plaintiff's Union filed a grievance against Defendant over Plaintiff's termination decision. Annie Rogers ("Rogers") was the Union President for Local 7050 Communications Workers of America, the local Union that represented Plaintiff. Rogers' duties included representation of and coverage of the New Mexico bargaining unit. Larry Larson ("Larson") was the Union's staff representative while Rogers was President. Larson handled grievances, conducted training sessions, and represented the Union. Plaintiff's grievance was prosecuted by the Union through all three steps set forth in the CBA.

On July 20, 2001, Rogers signed an affidavit in which she alleged that Defendant refused to provide information to the Union which was necessary to the processing of a grievance on behalf of Plaintiff.[3] Plaintiff's description of the requested documents included: (1) an approved vendor list for the recovery and sale of scrap metal; (2) Defendant's notes from the investigation

---

[3] The preamble to the affidavit makes it clear that the affidavit was intended for the National Labor Relations Board ("NLRB"), but does not state whether it was actually filed in a case with the NLRB.

4

conducted by ATT & Lucent; (3) Defendant's records for recovered scrap and copper for 2000 and 2001; (4) Defendant's contract between Jarvis, Inc. and Lucent; and (5) records that would reflect any costs to the company both in terms of income and loss from the recycling or removal of copper cable.  Pltff's Exs. H & J; Ex. 5 to Amended Complaint at 5.

Rogers' statement was filed before step three of the grievance process, and also before AT&T provided additional information to the Union.  It is not clear what this additional evidence was.  AT&T initially responded to Rogers' request by stating that vendor information was not used in Plaintiff's termination, and the Union could obtain this information available online.  AT&T would not provide the actual notes from the investigation into Plaintiff's activities, explaining that summaries had always been acceptable for use in past grievances.  Ex. H.  Defendant requested further clarification concerning Rogers' requests for records for recovered scrap and copper for 2000 and 2001, and responded to the request for the contract between Jarvis, Inc. and Lucent by stating that it did not have access to other Companies' documentation.  Ex. J.  Rogers did receive a photocopy of the contract between Lucent and AT&T for the removal of equipment and installations at Lubbock and Amarillo.  Amended Complaint, ¶ 18.  The record does not indicate whether the Union received any information concerning AT&T's loss from the alleged theft and Plaintiff's activities, but I agree with Defendant that whether the Union received this information is immaterial to the issue of the Union's breach of duty.

The Union filed a notice of election to arbitrate Plaintiff's claim with the Defendant, but did not proceed with demanding arbitration by applying to the American Arbitration Association as required under the CBA, and Plaintiff's case was ultimately closed as not arbitrable.  Instead, by letter on August 6, 2002, Larson notified Plaintiff that the Union had determined that his

grievance should not be pursued to arbitration. Based on AT&T's documentation which supported the termination, the Union felt that arbitration would not be successful. The letter also notified Plaintiff that he had the right to appeal the decision to not arbitrate, and absent such an appeal, his grievance would be considered closed on August 26, 2002. Plaintiff signed the receipt for the letter on August 12, 2002. Plaintiff does not dispute either that it is up to the Union to make the decision whether or not to arbitrate a matter, or that Larson, Rogers and others are involved in making that decision.

Plaintiff alleges that the Defendant breached the terms of the CBA by failing to accord him the "mutual respect" envisioned between parties as part of the CBA. This failure refers to AT&T's refusal to provide information that would allow the Union to determine whether "just cause" existed for Smith's disciplinary action, and to Defendant's failure to make a determination of "just cause" before terminating Smith's employment. Plaintiff's claim against the Union of the breach of the duty of fair representation is based on the Union's alleged failure to demand the information necessary for Plaintiff's defense, and because the Union decided not to pursue the matter to arbitration.

## Discussion

Summary judgment is only permissible where "pleadings, depositions, . . . and admissions . . . , together with the affidavits, . . . show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c). "The factual record and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment." Cross v. The Home Depot, 390 F.3d 1283, 1284-85 (10th Cir. 2004).

**I.    Section 301 claim under LMRA**

Defendant argues for dismissal of Plaintiff's § 301 claims both on the merits, and on the grounds that these claims are barred by the six-month limitations period which applies to "hybrid" cases such as Plaintiff's action.

A.    <u>Whether Plaintiff's Action is a "Hybrid" Action</u>

Section 301 suits, where employees charge that an employer has breached a collective bargaining agreement and that the union has breached its duty of fair representation, are called "hybrid suits" or "hybrid § 301/fair-representation claims." <u>Mock v. T.G.&Y. Stores Co., et al.</u>, 971 F.2d at 522, 530 (10th Cir. 1992); <u>Gibson v. U.S. Postal Service</u>, 380 F.3d 886 (5th Cir. 2004) (referring to such claims as "hybrid § 301/fair representation claims"); <u>Coppage v. U.S. Postal Service</u>, 281 F.3d 1200 (11th Cir. 2002) (same).

An employee's hybrid claim comprises two causes of action, the first against the employer for breach of the collective-bargaining agreement, and the second against the union for breach of its duty of fair representation. <u>DelCostello v. International Brotherhood of Teamsters et al.</u>, 462 U.S. 151, 161 (1983). These two claims in a hybrid action under § 301 of the LMRA are inextricably interdependent, because unless a plaintiff demonstrates both violations, he cannot succeed against either party.  Although the two claims in a hybrid action are brought in one suit, a cause of action will only lie against an employer if the union has breached its duty of fair representation, and accordingly, an employee must prevail on his or her unfair-representation claim before the employee may even litigate the merits of the claim against the employer. Accordingly, a breach of the duty of fair-representation claim is a necessary condition precedent to a hybrid LMRA claim.  <u>Id</u>. at 165; <u>Mock</u>, 971 F.2d at 531 (failure of union to fulfill its duty of

7

fair representation is an "essential element" of hybrid claim).

Plaintiff's position is that his cause of action is not a "hybrid" action because he has chosen not to name the Union as a party, and therefore the six-month limitations period does not apply to his case. Whether Plaintiff's case is a hybrid action is not dictated by Plaintiff's choice not to name the Union. It is dictated by the nature of his claims. An employee may choose to "sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. . . ." DelCostello, 462 U.S. at 164; Gibson v. U.S. Postal Service, 380 F.3d 886 (5th Cir. 2004) (regardless of defendant named in hybrid action, each element of such a cause of action, both a breach of the collective-bargaining agreement by the employer and a breach of the union's duty of fair representation, must be proven).

Plaintiff's reference to an unpublished opinion from a federal district court in Utah, Andrew Galway v. Smith's Food and Drug, Inc., is misplaced. 72 F.3d 137 (D.Utah 1995). Galway merely notes that a union need not be named as a defendant in a lawsuit in order for the employee to bring claims against the employer, and that the employee must still "carry the burden of demonstrating breach of duty by the Union." Id. at **3. Further, Galway was also a hybrid action, although not labeled as such, since in that case the plaintiff's grievance was forfeited and waived because the union failed to pursue it to arbitration.

Ordinarily, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement, and subject to limited judicial review, is bound by the result according to the finality provisions of the agreement. DelCostello, 462 U.S. at 163-64 (citations omitted). A hybrid suit is a judicially created exception to this general rule. United Food and commercial Workers, Local Union No. 7R v. Safeway Stores, Inc., et al., 889

F.2d 940, 943 (10th Cir. 1989); Vaca v. Sipes, 386 U.S. 171, 185-86 (1967) (describing other situations in which suit could be brought by employee despite failure to exhaust grievance process).  However, when an employee's grievance is forfeited and waived because the union failed to pursue it (as occurred in Galway), the employee must demonstrate that the union breached its duty of fair representation in order to sue the employer for breach of the collective bargaining agreement.  Galway, 72 F.3d 137 at \*\*3 (citing DelCostello, 462 U.S. at 164-65).

     Plaintiff also appears to suggest that his grievance process has not been fully exhausted due to the Union's breach of duty of fair representation, relying on Pratt v. United Air Lines, Inc., 468 F.Supp. 508 (1978), but it is unclear for what purpose, because Plaintiff offers no argument on this theory, and Defendant contend that it is undisputed that Plaintiff and the Union exhausted administrative remedies.  At any rate, Pratt does not help Plaintiff's position, because the case is not factually analogous.   In that case, neither the employer nor the union informed Plaintiff in a timely manner that his claim had been denied or that the Union had decided not to pursue the claim to arbitration.  When the time period provided by the collective bargaining agreement for demanding arbitration of the grievance lapsed, plaintiff's administrative rights were forfeited.

     The factual scenario in Pratt did not happen here.  The Union followed Plaintiff's grievance through the three steps, filed a notice of arbitration, and made a considered decision not to pursue the process further.  Moreover, if Plaintiff is contending that his grievance procedure was not fully exhausted due to the Union's breach of its duty to fairly represent him, such a contention is inconsistent with his claim that he is not pursuing a hybrid action.

     Plaintiff's allegations in the Amended Complaint and representations in the pleadings characterize this action as a hybrid action.  Amended Complaint, ¶ 21; Resp. to Sum. J. at 6, ¶¶ 22

& 24. See, Adkins et al. v. General Motors Corp. et al, 578 F.Supp. 315, 318 (S.D.Ohio, 1984) (hybrid action was pleaded where plaintiff's assertions are claims against employer as well as unfair representation by union). Thus, Plaintiff is first required to prove that the Union breached its duty of fair representation before litigating the merits of his claim against Defendant. See, DelColstello, 462 U.S. at 164-65; Mock, 971 F.2d 522, 531; see also, Young v. United Auto. Workers Labor Employment and Training Corp., 95 F.3d 992, 996 (10th Cir. 1996).

B.      Plaintiff's Claims of Breach By the Union

Defendant maintains that there is no merit to Plaintiff's contentions that the Union breached its duty of fair representation. Both parties agree that the determination of whether there has been a breach of the duty of fair representation is properly one for the Court. However, the parties' stipulation as to the Court's role in deciding the issue is not supported by any case on point. For example, Defendant cites to Young v. United Auto. Workers Labor Employment and Training Corp., 95 F.3d at 996, which was an appeal of the district court's grant of summary judgment to the defendant. The issue is more properly characterized as a mixed question of law and fact. See, e.g., Carter v. Smith Food King, 765 F.2d 916 (9th Cir. 1985); Linton v. United Parcel Service, 15 F.3d 1365 (6th Cir. 1994); Thomas v. Bakery, Confectionary and Tobacco Workers Union Local No. 433, 826 F.2d 755 (8th Cir. 1987) (whether union president knew that successor employer considered employees of predecessor employer to be new hires, but refused to negotiate to protect employees' interest, and then lied to them about their precarious situation, was question for jury in action brought against union for breach of its duty of fair representation). Of course, the question of whether the Union breached its duty of fair representation could be resolved by the Court as a matter of law if Plaintiff fails to present any evidence that creates a

material dispute of fact on the issue.

     A breach of the duty of fair representation occurs when the union's conduct toward the employee is "arbitrary, discriminatory or in bad faith." Traffas v. Cessna Aircraft Co., 62 Fed.Appx. 891, 898 (10th Cir. 2003) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)).  In the context of LMRA claims, a union's action are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness' as to be irrational."  A union's discriminatory conduct violates its duty of fair representation if it is "invidious." Traffas, 62 Fed.Appx. at 898 (quoting Air Line Pilots Ass'n. Int'l. v. O'Neill, 499 U.S. 65, 67 & 81 (1991)).  Acts by the union which are merely negligent do not state a claim for breach of a duty of fair representation. Id. (citing United Steelworkers of America, AFL-CIO-CLC v. Rawson, 495 U.S. 362, 372-73 (1990)).

     Plaintiff bases his claim for breach of duty on the Union's refusal to go further and not be more aggressive in demanding production of certain documents that were necessary to his defense. However, Defendant presents evidence which supports its position that the Union fairly represented Plaintiff.  The Union diligently prosecuted Plaintiff's claim through all three steps of the grievance process and then filed a demand for arbitration, backing out of the arbitration process only after considering the documentation supporting the employer's decision to terminate Plaintiff.  Plaintiff did not appeal the Union's decision to not arbitrate his claim. There is even evidence that until recently, Plaintiff himself felt that the Union did all it could to represent his case.  Annie Rogers, the local union president, stated that Plaintiff thanked the Union representatives for their help.  Deft's Ex. E at 108:5-7.  Plaintiff's own statements of fact concerning Rogers' affidavit show the Union's perseverance in its efforts to obtain certain

information which the Defendant had not produced at that time.  Resp., ¶ 19-20.

Plaintiff offers no material facts by way of affidavits or depositions which challenge Defendant's position.  Most of the evidence presented by Plaintiff goes to the argument that AT&T lacked just cause for the termination.  This is not relevant to the issue of the Union's breach of duty, nor does it create an issue of fact sufficient to withstand summary judgment on that claim.

Plaintiff's dissatisfaction with his representation by the Union, without more, does not form the basis for claims of breach by the Union.  See, Mock, 971 F.2d at 530 ("simply showing that the Union did not represent [plaintiffs] as vigorously as it could have does not establish a § 301 violation"].  Plaintiff has not shown that the Union's behavior fell outside an acceptable range of reasonableness, nor has he shown any fraudulent or deceitful conduct by the Union which shows bad faith or was arbitrary, discriminatory or irrational in the pursuit of Plaintiff's grievance against his employer.

Because Plaintiff has not satisfied the threshold issue of the Union's breach of the duty of fair representation, Plaintiff's § 301 claim against his employer fails, and as a result, AT&T is entitled to summary judgment on that claim.  See, DelCostello, 462 U.S. at 164-65) (employee must demonstrate that the union breached its duty of fair representation in order to sue the employer for breach of the collective bargaining agreement).

However, Plaintiff's LMRA claims also fail under Defendant's alternate argument, in which AT&T raises a statute of limitations defense.

C.      Whether Plaintiff's § 301 Claim is Barred by the Statute of Limitations

Defendant contends that Plaintiff's § 301 claim is barred by the six-month limitations

period which governs hybrid actions.

Congress has not enacted a statute of limitations governing actions brought pursuant to § 301 of the LMRA. The timeliness of a § 301 suit is generally determined, as a matter of federal law, by reference to the appropriate state statute of limitations. United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 62 (1981). Plaintiff urges the Court to apply New Mexico's statute of limitations for bringing an action under a written contract, which is six years. NMSA, 1978, § 37-1-3. However, the United States Supreme Court has decided that in cases where a plaintiff brings claims against the employer and union for breach of the collective bargaining agreement and breach of the duty of fair representation (i.e., hybrid actions), such an action has no close analogy in ordinary state law. DelCostelo v. International Brotherhood of Teamsters et al., 462 U.S. at 158 (J. Stevens and J. O'Connor, dissenting). For this type of case, a federal statute of limitations exists which was "designed to accommodate a balance of interests" similar to those present in a hybrid action -- referring to the six-month period for making charges of unfair labor practices to the National Labor Relations Board. § 10(b). Id. at 168.[4]

The Supreme Court in DelCostello emphasized that its holding was not a departure from the practice of borrowing limitations periods for federal causes of action. Id. at 171. However, DelCostello forecloses the use of a state statute of limitations for hybrid cases, such as the action Plaintiff brings here.

The Court has already determined that Plaintiff's claim is clearly a hybrid action. Thus, the final question is whether Plaintiff's suit is barred under the six-month limitations period. This period begins to run when the employee knew or "should have known . . . through the exercise of

---

[4] See, National Labor Relations Act, § 10(b), as amended, 29 U.S.C.A. § 160(b).

13

reasonable diligence that the Union had abandoned his grievance claim." Lucas v. Mountain States Tel. & Tel., 909 F.2d 419, 422 (10th Cir.1990). Plaintiff concedes that on August 12, 2002, he received the letter from the Union which notified him that the Union would not be pursuing arbitration on his grievance. Thus, the limitations period was triggered on that day, which was almost two years before Plaintiff amended his complaint (on July 15, 2005) to allege claims brought under § 301 of the LMRA, and almost three years before filing the original state lawsuit in April 2004. At best, Plaintiff's lawsuit was late by a year and a half. See, Poole v. Southwestern Bell Telephone L.P., 86 Fed.Appx. 372 (10th Cir. 2003) (plaintiff's suit was time-barred where she filed lawsuit eight months after receiving notice that the Union would take no further action on her grievance). Therefore, Defendant is entitled to summary judgment on Plaintiff's § 301 claims on this basis as well.

**II.     Due Process Claim**

In his Amended Complaint, Plaintiff alleges a violation of his federal due process rights under the Fourteenth Amendment. The Court notes that Plaintiff was not given leave to amend his Complaint generally, but was allowed to amend his Complaint only to allege "claims under § 301 of the LMRA." Doc. 36 at 8.

Even allowing this claim to remain in the Amended Complaint, Plaintiff cannot obtain relief on this theory because Defendant AT&T is not a state actor, which is a requirement for due process claims brought under the Fourteenth Amendment. See, Browns v. Mitchell, 409 F.2d 593, 594 (10th Cir. 1969) ("It is axiomatic that the due process provisions of the Fourteenth Amendment proscribe state action only and do not reach acts of private persons unless they are acting 'under color of state law'") (citing United States v. Guest, 383 U.S. 745 (1966)). There is

14

no evidence or argument which would remotely suggest that AT&T is a state actor for these purposes. Accordingly, summary judgment will be granted to Defendant on Plaintiff's due process claim.

## Conclusion

Plaintiff's § 301 claim is brought as a hybrid action against his employer for breach of the collective bargaining agreement, and against the Union for breach of the duty of fair representation. Plaintiff has failed to show a disputed issue of material fact regarding the Union's breach, which is a prerequisite to a suit against his employer. Thus, summary judgment is appropriate on Plaintiff's § 301 claims against his employer, the named Defendant in this lawsuit. Plaintiff's § 301 claims are also barred by the applicable limitations period for hybrid actions.

Plaintiff has failed to allege a due process claim against Defendant because Defendant is not a state actor.

**THEREFORE,**

**IT IS ORDERED** that the Second Motion for Summary Judgment filed by American Telephone and Telegraph Communications, Inc. ("AT&T") **(Doc. 55)** is hereby GRANTED, in that Plaintiff's claims against Defendant are DISMISSED in their entirety for reasons stated above.

A Final Judgment shall issue.

UNITED STATES DISTRICT JUDGE